UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MAI YANG,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security

    Defendant.

No. 2:17-cv-1748-EFB

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties have filed cross-motions for summary judgment. ECF Nos. 13, 15. For the reasons discussed below, plaintiff's motion for summary judgment is granted, the Commissioner's motion is denied, and the matter is remanded for further proceedings.

I.    Background

Plaintiff filed applications for a period of disability, DIB, and SSI, alleging that she had been disabled since August 1, 2012. Administrative Record ("AR") 241-54. Plaintiff's applications were denied initially and upon reconsideration. *Id.* at 153-56, 158-62. On January

/////

21, 2016, a hearing was held before administrative law judge ("ALJ") G. Ross Wheatley.[1] *Id.* at 43-70. Plaintiff was represented by counsel at the hearing, at which she and a vocational expert testified. *Id.*

On February 24, 2016, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act.[2] *Id.* at 20-35. The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

---

[1] A hearing was initially held on September 1, 2015, but it was continued to obtain a certified Hmong interpreter to translate plaintiff's testimony. AR 71-83.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

2. The claimant has not engaged in Substantial Gainful Activity (SGA) since August 1, 2012, the Alleged Onset Date (AOD) (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: depressive disorder, psychotic disorder, stage 4 renal failure, possible arthritis of the right knee, and hypertension (20 CFR 404.1520(c) and 416.920(c)).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the Residual Functional Capacity (RFC) to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), with the following additional limitations, she can stand or walk for 6 hours of an 8 hours workday, sit for up to 6 hours of an 8 hours workday, with normal breaks; she can occasionally climb ladders, ropes, and scaffolds. She can frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She is limited to simple (defined in the Dictionary of Occupational Titles (DOT) as Specific Vocational Preparation levels (SVP 1 and 2), routine, and repetitive tasks. She is limited to work that involves no more than occasional changes in the work setting. In addition, she is limited to no more than occasional interaction with the general public.

\* \* \*

6. The claimant is capable of performing Past Relevant Work (PRW) as a Hand Packager (DOT 920.587-018; medium exertional level; unskilled; SVP 2). This work does not require the performance of work-related activities precluded by the claimant's Residual Functional Capacity (RFC) (20 CFR 404.1565 and 416.965).

\* \* \*

7. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2012, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

*Id.* at 22-35.

Plaintiff's request for Appeals Council review was denied on June 28, 2017, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-5.

/////

/////

3

II. Legal Standards

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. Analysis

Plaintiff argues that the ALJ erred in (1) rejecting the opinion of her treating physician, Dr. Pamela Smith; (2) finding she can perform her past relevant work; and (3) finding, alternatively, that she could perform other jobs in the national economy. ECF No. 13-1 at 15-30. As explained below, the matter must be remanded due to the ALJ's failure to provide legally sufficient reasons for rejecting the opinion of plaintiff's treating physician. Accordingly, the court declines to address plaintiff's additional arguments.

A. Relevant Legal Standards

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a

greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id*. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

B. <u>Background</u>

Dr. Pamela Smith, plaintiff's treating psychiatrist, completed a medical assessment regarding plaintiff's abilities to perform work-related activities. AR 622-26. Dr. Smith diagnosed plaintiff with major recurrent depression and identified symptoms of depressed mood, anxiety, and insomnia. *Id*. at 622. She opined that plaintiff was limited in her ability to understand, remember, and carry out detailed, but not complex job instructions; and plaintiff's ability to understand, remember, and carry out simple job instructions and maintain personal appearance was fair. *Id*. at 625. It was also Dr. Smith's opinion that plaintiff's ability to follow work rules, relate to coworkers, deal with the public, use judgment, interact with supervisors, deal with work stress, function independently, maintain attention and concentration, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability were poor. *Id*. at 623, 625. Dr. Smith also concluded that plaintiff maintained the ability to manage benefits in her own best interest. *Id*. at 626.

Plaintiff was also evaluated by examining psychologist David Richwerger, Ed.D. *Id*. at 490-96. Dr. Richwerger completed a mental status evaluation, but concluded that the results appeared to be significant underestimates due to plaintiff putting forth a low level of effort. *Id*. at 493-94. Taking into account plaintiff's effort during examination, Dr. Richwerger opined that plaintiff was mildly impaired in performing detailed and complex tasks, interacting with coworkers and the general public, dealing with the usual stresses encountered in a competitive work environment; and moderately impaired in completing a normal workday or workweek without interruption from psychiatric conditions.

Two state agency non-examining sources, Dr. Karen Ying, M.D. and psychologist Hillary Weiss, Ph.D., also provided opinions regarding plaintiff's mental limitations. Dr. Ying opined that plaintiff could perform short and simple tasks, but was moderately impaired in performing detailed tasks; maintaining attention and concentration for extended periods; performing activities within a scheduling; maintaining regular attendance; being punctual within customary tolerance; completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; responding to changes in the work setting; and setting realist goals or making plans independently. *Id*. at 93-95, 107-09. Dr. Weiss largely agreed with Dr. Ying's opinion, but opined that plaintiff was not significantly limited in performing activities within a schedule, maintain regular attendance; being punctual within customary tolerance; asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; and setting realistic goals or making plans independently. *Id*. at 127-29, 146-48.

C. <u>Discussion</u>

In assessing plaintiff's RFC, the ALJ accorded "little weight" to Dr. Smith's treating opinion, while giving "some weight" to the opinions of Drs. Richwerger, Weiss and Ying. *Id*. at 30-31. Because Dr. Smith's opinion was contradicted by the other medical opinions, the applicable standard required the ALJ to provide specific and legitimate reasons for rejecting her

opinion. *See Ryan v. Comm'r Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). In his decision, the ALJ provided the following explanation for why Dr. Smith's opinion was given reduced weight:

> Although Dr. Smith is a mental health specialist and has a treating relationship with the claimant, [her] opinion is given little because it is contradicted by the generally adequate mental functioning that the claimant exhibited throughout the adjudicated period (2F, 9F, 31F and 36F). In addition, the opinion is inconsistent with the claimant's generally adequate daily living activities and social activities as discussed above (Exhibits 5E, 9 F/13, and hearing testimony). Moreover, the opinion is internally inconsistent: despite the extreme mental restrictions imposed by Dr. Smith, Dr. Smith still found that the claimant could manage benefits in her own best interest (Exhibit 30F).

*Id*. at 31.

The ALJ's first reason for rejecting Dr. Smith's opinion—that it was inconsistent with plaintiff's "generally adequate mental functioning"—fails to satisfy the specific and legitimate standard. An ALJ may satisfy this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo v. Berryhill*, 871 F.3d 664,675 (9th Cir. 2017). Here, the ALJ failed to identify any specific clinical findings to support his conclusion that plaintiff demonstrated "generally adequate functioning." Instead, the ALJ merely cited to numerous treatment records, without setting out a detailed and thorough summary of these medical records and explaining why they contradict Dr. Smith's opinion. This is particularly troubling given that the ALJ observed earlier in his decision that these records showed that plaintiff "was often noted to have a sad, depressed, or dysphoric mood, a constricted affect, monotone speech, and psychomotor retardation throughout the adjudicated period." AR 27 (citing 1F, 2F, 5F, 9F, 31F, 36F).

In the same vein, the ALJ's finding that Dr. Smith's opinion was inconsistent with daily activities and social activities "as discussed above" falls far short of setting out the pertinent facts, stating an interpretation of such facts, and making a finding. Although earlier sections of the ALJ's decision discuss some of plaintiff's activities, the court is left to guess which particular activities the ALJ believed to be inconsistent with Dr. Smith's opinion. More significantly, the activities reported by plaintiff, and summarized in the ALJ's decision, were quite limited.

/////

7

Plaintiff reported the ability to perform her personal care, prepare simple meals, clean, do laundry, drive a car short distances, shop for groceries, pay bills, count change, and interact with her family. AR 60-62, 281-87, 310-317. The ability to perform these limited activities is not inconsistent with Dr. Smith's opinion that plaintiff has a poor ability to perform several work-related activities.

> The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

*Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *see Trevizo*, 871 F.3d at 682 ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."); *cf. Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) ("We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.").

The only other activity discussed by the ALJ was plaintiff going to South Carolina to attend a funeral. AR 24, 29, 56-57. The ALJ concluded that "[t]raveling long distance and attending a funeral typically requires some mental and physical capacity to plan, prepare, and execute." AR 29. The record, however, does not reflect that plaintiff was involved in the planning or preparation of the trip. Nor does is show how a single trip to attend a funeral demonstrates the ability to perform a job in spite of the limitations found be Dr. Smith. Instead, the only information in the record regarding the trip is that plaintiff flew with her brother. AR 57. Accordingly, to the extent the ALJ relied on this activity to reject Dr. Smith's opinion, he improperly did so. *See Trevizo*, 871 F.3d at 676 (ALJ erred in rejecting treating physician's opinion based on plaintiff's ability to care for young children "where the record provide[d] no details as to what [plaintiff's] regular childcare activities involved.").

8

The ALJ's last reason for rejecting the limitations assessed by Dr. Smith was that they were inconsistent with her opinion that plaintiff could manage benefits in her best interest. The ALJ, however, provides absolutely no explanation for why plaintiff's ability to manage a minimal amount of funds to occasionally pay for necessities is inconsistent with a poor ability to work activities on a sustained basis. *See Johnson v. Berryhill*, 2017 WL 2437606, at *6 (W.D. Wash. June 6, 2017) (finding that there was not necessarily an inconsistency for physician to opine that the plaintiff is "capable of managing a small amount of money to buy food or perhaps pay rent once a month but find her incapable of completing tasks in a timely manner on a daily basis as might be required in a work environment with deadlines or production demands."); *Tucker v. Comm'r Soc. Sec.*, 2014 WL 3615493, at *7 (E.D. Cal. July 21, 2014) (observing that "a marked impairment in maintaining normal daily activities may not necessarily be inconsistent with the ability to manage funds . . . ."); *Little v. Berryhill*, 2018 WL 4442317, at 25 (N.D. Ohio June 4, 2018) (finding ALJ erred in rejecting physician's opinion as inconsistent with daily activities because the ALJ failed to explain how plaintiff's ability to perform minimal household chores, including managing funds, demonstrates that she was not markedly limited).

IV. Conclusion

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. The Commissioner's cross-motion for summary judgment is denied;

3. The matter is remanded for further proceedings consistent with this order; and

4. The Clerk is directed to enter judgment in the plaintiff's favor and close the case.

DATED: September 25, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE